IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDY CASTILLO,<br><br>　　　　Petitioner,<br><br>　v.<br><br>EDMUND G. BROWN,<br><br>　　　　Respondent. | No. C 05-1177 WHA (PR)<br><br>**DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This is a habeas case filed pro se by a former state prisoner pursuant to 28 U.S.C. 2254. The petition was stayed to allow petitioner to exhaust his state court remedies. After petitioner indicated that he had completed exhaustion, the stay was lifted. The petition was then dismissed it with leave to amend because petitioner's issues were not sufficiently clear to allow respondent to formulate an answer. Petitioner amended, abandoning all his claims except his contention that his two public defenders were ineffective. In response to the order to show cause why the writ should not be granted, respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below the petition is **DENIED**.

## STATEMENT

On July 25, 2003, a jury in Santa Clara County Superior Court found petitioner guilty of

1  resisting a police officer, a misdemeanor (Exh. 1 [Clerk's Transcript ("CT")] at 186).[1]  The trial
2  court sentenced him to a term of nine months in county jail and three years probation (CT 191.)
3  Petitioner appealed to the appellate division of the Superior Court, which affirmed the judgment.
4  The California Court of Appeal denied the petition to transfer the case to that court for review
5  (Exh. 2).  Thereafter, he filed habeas petitions in the superior court, the California Court of
6  Appeal, and the California Supreme Court, all of which were denied (Exhs. 3-6).

   On the evening of March 30, 20002, petitioner called 911 to report that his wife
8  accidentally shot herself in the head (Reporter's Transcript[2] ("RT") 159, 170-74).  After the
9  police arrived, petitioner followed his wife out of the house with a gun (RT 54-56, 190-91).  The
10 police ordered petitioner to drop the gun, which he eventually did (RT 56, 195).  Petitioner's wife
11 followed the officers' orders to come forward, but petitioner refused and went back into the house
12 (*id.* at 57-58, 195).  A stand-off ensued, and the police set up a perimeter around the house,
13 evacuated the nearby homes, and ordered petitioner to come out over loud speakers and over the
14 phone (*id.* at 66, 112-16, 143-50, 195-203).  Although he left the house briefly to retrieve his
15 wife's hand bag, he returned to the house until 4:00 or 5:00 a.m. the next day, when he finally
16 surrendered to the police (*id.* at 69, 115, 211-12).

## DISCUSSION

**A.  STANDARD OF REVIEW**

19      A district court may not grant a petition challenging a state conviction or sentence on the
20 basis of a claim that was reviewed on the merits in state court unless the state court's adjudication
21 of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable
22 application of, clearly established Federal law, as determined by the Supreme Court of the United
23 States; or (2) resulted in a decision that was based on an unreasonable determination of the facts
24 in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d).  The first

---

[1] All references to "Exh." are to the record lodged by the respondent.

[2] The Reporter's Transcript of the trial from July 21-25, 2003, is included among the unnumbered exhibits filed by petitioner on April 13, 2006 (Docket No. 9.)

2

prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.    ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner claims that he received ineffective assistance of counsel from the two lawyers who represented him at trial, Sarah McCarthy and Jeffery Dunn, who was appointed to replace McCarthy. Specifically he claims that: (1) McCarthy waived his speedy trial rights without his consent; (2) McCarthy was ineffective with respect to obtaining the police dispatch tapes; (3) McCarthy lied to him when she requested a continuance to review the dispatch tapes; (4) McCarthy colluded with the prosecutor to move the trial to another courtroom before a different judge; (5) McCarthy lied at the hearing on petitioner's motion to substitute counsel pursuant to *People v. Marsden*, 2 Cal.3d 118 (1970) and then tried to dissuade him from obtaining a transcript of the hearing; and (6) Dunn had a "conflict of interest" caused by petitioner's claims of misconduct against McCarthy, one of Dunn's colleagues.

As there is no reasoned opinion by the state courts as to petitioner's request for habeas relief for ineffective assistance of counsel, an independent review of the record is required to ascertain whether the decisions of the state courts were objectively reasonable. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must show: first, that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Second, he must affirmatively establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693–94. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Id.*

1.    <u>Time Waiver</u>

Petitioner claims that McCarthy waived his right to a speedy trial without his knowledge or consent. Petitioner's claim is belied by the record, however, which shows that he was present at the court hearing on June 10 and 11, 2002, at which McCarthy waived time on his behalf (CT 63, 65). Petitioner did not object to the waiver, nor did he object when McCarthy explained to the

1  court that petitioner had agreed to waive time in order to allow her to complete the "substantial
2  investigation" needed to prepare for trial (RT 6/10/02 at 1). The trial court granted the request for
3  a waiver, and continued the trial to August 19, 2002 (CT 65; RT 10/1/02 at 10).

Petitioner's changing his mind after the fact did not render McCarthy's initial waiver, that petitioner had agreed to at the time, unreasonable. After the waiver hearing, on June 13, 2002, petitioner wrote a letter to McCarthy stating that he changed his mind and did not want the continuance.[3] In response, McCarthy notified petitioner that if he wished, she could withdraw the time waiver and trial would occur within thirty days (McCarthy Letter of June 27, 2002.) She did not recommend withdrawing the waiver because she had not yet received, or reviewed, all 12 of the police dispatch tapes (*ibid.*) Petitioner declined to withdraw the waiver (Petitioner Letter of July 8, 2002.) On this record, nothing in McCarthy's performance with respect to waiving time was unreasonable or amounted to deficient performance under *Strickland*.

2.  Police Dispatch Tapes

Petitioner claims that McCarthy was ineffective in how she handled the police dispatch tapes. First, he faults McCarthy because the tapes that were "all fraudulent," "irrelevant, redundant, and worthless," "garbled," and did not include recordings of the conversations between petitioner and the police negotiators (Pet. 3). The record demonstrates that McCarthy requested the tapes, obtained all of them, and reviewed them (RT 8.19/02 at 2; RT10/1/02 at 10-12). It was the police, not McCarthy, who recorded the tapes, however, and thus McCarthy cannot be faulted for any shortcomings in the audio quality or the exculpatory value of the tapes. Similarly, it was not her fault that the tapes did not include recordings of the negotiations between petitioner and the police, as the prosecutor confirmed that these negotiations were never recorded because they were conducted over a cell phone (RT 10/1/02 at 11-12, 29).

Petitioner also complains that McCarthy did not receive the tapes sooner. She received three of the tapes in June 2002 and the remaining nine tapes in August 2002 (McCarthy Letter June 27, 2002; RT 8/19/02 at 2-3). Petitioner points to no evidence, nor is there any indication in

---

[3]All of the letters referenced in this section are among the unnumbered exhibits filed by petitioner on April 13, 2006 (Docket No. 9).

5

the record, that delays by the police and prosecutor in producing the tapes were in any way attributable to McCarthy, nor does he identify any exculpatory evidence that was lost or any other prejudice petitioner suffered as a consequence of such delays.

There is no basis for finding that McCarthy was ineffective with respect to obtaining the police tape recordings.

### 3. August 19, 2002 Request for a Continuance

Petitioner complains that McCarthy "lied" to him because she told him on the Friday before the August 19, 2002 hearing that she would request a trial date at the hearing, but when the hearing came she requested, and received, a continuance. Petitioner offers no evidence to substantiate his claim that she "lied" to him; she might simply have changed her mind over the weekend when she considered that she had just received,[4] and would have to review, nine police dispatch tapes. More importantly, petitioner does not describe any prejudice to him from the continuance, nor is any such prejudice apparent from the record. To the contrary, as McCarthy had just received the police dispatch tapes, a continuance would appear to be reasonably necessary for her to be adequately prepared for his trial. Moreover, petitioner did not appear to have any problems with continuing the trial as he himself requested a further continuance at the subsequent hearing, on September 30, 2002 (RT 9/30/02 at 2).

### 4. Transfer to Different Courtroom

Petitioner claims that McCarthy colluded with the prosecutor and the court to have his case transferred to another courtroom with another judge (Pet. at 5.) The case was transferred on September 30, 2002 from Judge Walsh to Judge Davila. (CT at 67, 69.) Petitioner bases his claim of collusion solely on the fact that there is no "formal" discussion at the September 30, 2002 hearing before Judge Davila as to why the case was transferred, and it appeared to him that Judge Davila was already familiar with the case . The lack of discussion of what is ordinarily a routine administrative action by the superior court for purposes of case management does not evince collusion, nor does Judge Davila's preparation and familiarity with a case coming before

---

[4]According to petitioner, McCarthy received the tapes on August 16, the Friday before the hearing (Pet. 3.)

6

1    him. Petitioner's claim of collusion is purely speculative, and there is no evidence or any
2    indication in the record that McCarthy or the prosecutor played any role in the transfer. (*See id.*)
3    Moreover, petitioner does not identify any impact that the transfer of the case had on the outcome
4    of the trial, let alone any impact that was prejudicial to petitioner.

   5.   *Marsden* hearing

6    Petitioner claims that McCarthy "lied" at the October 1, 2002 hearing on his motion,
7    pursuant to *People v. Marsden*, 2 Cal.3d 118 (1970), for substitution of counsel. Petitioner claims
8    that McCarthy lied by stating that petitioner was present when time was waived at the June 10-11,
9    2002 hearing. The record indicates that he was in fact present at that hearing, however (CT 63,
10   65). The record does not support petitioner's conclusory allegations that McCarthy "lied."

11   Petitioner claimed at the *Marsden* hearing that McCarthy was negligent and working
12   against petitioner with respect to obtaining recordings of police communication at the scene of the
13   crime. McCarthy testified at the hearing that she requested two categories of tape recordings: (1)
14   tapes of conversations between the police dispatcher and the officers at the scene; and (2) tapes of
15   conversations between petitioner and the police negotiators (RT 10/1/02 at 10-11). She made
16   three written requests for the tapes, on June 6, June 11 and August 7, and several phone
17   conversations and e-mail exchanges with the prosecutor seeking the tapes (*id.* at 11). As noted
18   above, she received three of the twelve dispatch tapes in June and the remaining tapes in August,
19   but did not receive tapes of the negotiations (*ibid.*). She inquired about the negotiations tapes,
20   and the prosecutor informed her that the negotiations had not been recorded (*ibid.*).

21   McCarthy's performance with respect to police tapes was more than sufficient insofar as
22   she requested the tapes on multiple occasions and ultimately obtained all the tapes that had been
23   made by the police. Petitioner does not describe any evidence or point to anything in the record
24   to contradict McCarthy's testimony as to the efforts she expended in obtaining the dispatch tapes,
25   or as to the prosecutor's statement that the negotiations tapes did not exist.[5] Petitioner's

---

[5] Petitioner also fails to point to any evidence to support his claim that the prosecutor had in fact taped the negotiations but had failed to turn them over. Petitioner argues later in the petition that Dunn, who replaced McCarthy, was ineffective at a June 6, 2003 discovery hearing at which he accepted the prosecutor's representations that the negotiations were not recorded (Pet. at 8). In the absence of evidence that tapes of the negotiations were ever made or that the prosecutor destroyed or

7

unsupported and conclusory allegations that McCarthy was negligent and was working for the prosecutor do not establish that she performed deficiently.

Finally, petitioner alleges that McCarthy attempted to discourage him from obtaining a transcript of the *Marsden* hearing in order to "cover-up" her "misconduct" (Pet. at 7). Any discouragement by McCarthy, even if true, did not prevent petitioner from seeking such a transcript on two occasions. On January 3, 2002, Judge Davila denied the request for the transcript, and on January 17, 2003, Judge Bocanegra also denied such a request (CT at 78; RT 1/17/03 at 2). Moreover, there is no indication that the denial of petitioner's requests for the transcript by the trial judges were in any way attributable to any dissuasion by McCarthy. Consequently, petitioner has not shown how he was prejudiced by McCarthy allegedly discouraging him from seeking the *Marsden* transcript.

6. Conflict of Interest with Dunn

Petitioner claims that Dunn had a conflict of interest because he was employed at the same public defender's office as McCarthy, against whom petitioner had previously filed a claim of misconduct with the County of Santa Clara.[6] The fact that petitioner had previously filed a claim of misconduct against Dunn's colleague did not, on its own, create a conflict of interest. *See Foote v. Del Papa*, 492 F.3d 1026, 1029 (9th Cir. 2007) (finding appellate counsel from public defender's office did not have a conflict of interest arising from defendant's prior lawsuit against the public defender's office and prior public defender). Moreover, petitioner indicated that he did not have a problem with Dunn's performance in representing him, and Dunn indicated that he could properly represent petitioner (RT 7/21/03 at 4-5, 10). Accordingly, petitioner's claim that there was a conflict of interest between him and Dunn fails.

In sum, petitioner's claims that he received ineffective assistance of counsel from McCarthy and Dunn fail because petitioner either has failed to substantiate his allegations regarding their representation, has failed to demonstrate prejudice, or both. The state courts'

---

hid them, Dunn cannot be faulted for accepting the prosecutor's representation that they did not exist.

[6]The County of Santa Clara rejected the claim on January 23, 2003.

8

1  rejection of his claim of ineffective assistance of counsel was neither contrary to, or an
2  unreasonable application of, clearly-established United States Supreme Court authority.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file and terminate any pending motions.

**IT IS SO ORDERED.**

Dated:   September  3   , 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.05\Castillo177.RUL.wpd

9